IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW MARCONI, | No. C 05-1978 CW |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING IT IN PART |
| OFFICER ONE, et al., | |
| Defendants. | |

Defendants City and County of San Francisco (City) and Jason Fox, Simon Chan and Ian Furminger (collectively Defendant Officers) move for partial summary judgment on Plaintiff Andrew Marconi's § 1983 claims and pendent State claims against them.[1] The matter was heard on September 29, 2006. Having considered all of the papers filed by the parties and oral argument on the motion, the Court grants in part Defendants' motion and denies it in part.

---

[1] The parties' stipulation for dismissal of: (1) the third cause of action, battery, against Furminger and the City; (2) the fourth cause of action, assault, against Furminger and the City; and (3) the Seventh Cause of Action, violation of various penal code sections and negligence per se (Docket # 30), is construed as including a motion to dismiss those claims and is hereby GRANTED.

United States District Court
For the Northern District of California

BACKGROUND

This lawsuit arises out of an incident involving Defendant Officers and Plaintiff Andrew Marconi early in the morning of March 7, 2004, in San Francisco. On March 6, Plaintiff and several friends came to San Francisco from Stockton and Sacramento to celebrate Marconi's sister's college graduation. At around 2:00 AM on March 7, the group arrived at the End-Up, a gay nightclub. There was a long line to enter the nightclub, so Marconi and one of his sister's friends, Eric Piedra, went around the corner, into an alley to urinate.

While Marconi was urinating, a car abruptly stopped in the middle of the street and then reversed into the alley to where he was standing. Both Marconi and Piedra testified that they were afraid because they believed that they were going to be mugged. The car was unmarked and had no lights on.

The car was in fact an unmarked police car, driven by San Francisco Police Sergeant Jason Fox. Officer Simon Chan and Officer Ian Furminger were in the car with Fox. Both Fox and Chan, who was riding in the rear driver's side seat of the car, state that they saw what appeared to be a man urinating in the alley to their left as they drove by. Fox states that he reversed into the alley "to investigate because public urination is a crime in San Francisco." Fox Decl. at ¶ 3. Furminger, who was riding in the front passenger seat, states only that Fox stopped the car in the alley and that Fox and Chan got out of the car. Furminger further states that he was not involved with the incident nor did he observe Fox or Chan interact with Marconi.

2

1     Fox and Chan exited the car and approached Marconi.[2]  Marconi
2 states that Fox and Chan approached him without indicating that
3 they were police officers and asked what he was doing.  Marconi
4 replied, "nothing," and Fox and Chan asked if he had been
5 urinating.  When Marconi stated that he had been, Fox grabbed him
6 and asked, "do you think the people of San Francisco want your
7 faggot ass to pee in the City?"  Marconi Decl. at ¶ 8.  Fox then
8 pushed Marconi against the wall and frisked him.  Marconi states
9 that Fox "patted his hands onto my chest and dug his hands into my
10 hips, ran his fingers through my waistband, put his hands into my
11 pockets and yanked them out with such force as to leave red marks
12 where his fingers gouged into my legs."  Id.

13     After frisking Marconi, Fox turned him around, grabbed him by
14 the shoulders and pushed him down to his knees, asking Marconi how
15 he was going to clean up the urine.  Fox was holding a flashlight
16 within inches of Marconi's face.  Chan then called Marconi a "fag"
17 and told him that he should clean up the urine with his shirt.
18 Marconi took off one of the two t-shirts that he was wearing and
19 began to wipe the ground where he had urinated.  Fox asked Marconi
20 how he intended to clean the urine off of the wall behind him then
21 ordered him to sit on the ground with his back against the wall.
22 Fox grabbed Marconi's hair, pushed his head against the wall and
23 pushed it back and forth across the wall, wiping Marconi's hair in
24 the urine and abrading Marconi's head.  Fox asked, "Do you think we

---

[2]The parties' accounts of the next two minutes differ significantly.  However, for purposes of this motion for summary judgment, the version of the non-moving party, Plaintiff Marconi, is taken as true.

3

want your gay AIDS in our City?"  Id. at ¶ 14.

While this was happening Piedra was being questioned by Furminger at the end of the alley closer to the street.  Furminger demanded that Piedra show him where he had been standing to prove that he had not urinated in the alley.  While Piedra was talking to Furminger, he turned back to look at Marconi and saw that he was crouched down on the ground.  He also overheard Fox and Chan speaking in a "smart-ass, arrogant fashion," saying "we don't have to worry about this one, he's cleaning up his own mess."  Piedra Dep. at 42:20-21.  Piedra also heard Fox and Chan talking about either "HIV" or "AIDS" infected "piss" or "urine."  Id. at 43:23; 45:11-46:13.  He noted that Fox and Chan were standing over Marconi, within one or two feet.  Id. at 117:7-21.

Piedra stated that Furminger never touched him, but looked at his ID before he let him go.  Piedra decided to go back to the line to get Marconi's sister Abbie Marconi (Abbie) and her boyfriend, Eric Gora, who were both police officers.  Piedra states that he went to get them "[b]ecause something wasn't right," and he "didn't feel right leaving Andrew there . . . being a gay individual amongst arrogant cops, or . . . smart-ass attitudes."  Id. at 109:20-23.

Marconi was still on the ground, with Fox and Chan standing over him, chastising him.  Marconi heard Abbie's voice and looked up.  He saw Gora displaying his badge and stating that he was a police officer.  When Gora showed his badge to Furminger, Furminger turned to Fox, and said, "He's a cop."  Gora Dep. 129:23. Immediately, the officers got back into the car and pulled away.

4

1  Abbie and Gora saw the license plate of the car as it drove away,
2  and Abbie, Gora and Marconi memorized the letters and numbers.  The
3  incident lasted about two minutes.
4      Plaintiff's First Amended Complaint (FAC) includes ten causes
5  of action, one of which has been dismissed in its entirety.  See
6  supra note 1.

## LEGAL STANDARD

8      Summary judgment is properly granted when no genuine and
9  disputed issues of material fact remain, and when, viewing the
10 evidence most favorably to the non-moving party, the movant is
11 clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.
12 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
13 Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.
14 1987).
15     The moving party bears the burden of showing that there is no
16 material factual dispute.  Therefore, the court must regard as true
17 the opposing party's evidence, if supported by affidavits or other
18 evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815
19 F.2d at 1289.  The court must draw all reasonable inferences in
20 favor of the party against whom summary judgment is sought.
21 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
22 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d
23 1551, 1558 (9th Cir. 1991).
24     Material facts which would preclude entry of summary judgment
25 are those which, under applicable substantive law, may affect the
26 outcome of the case.  The substantive law will identify which facts
27 are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods. <u>Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1106 (9th Cir. 2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

<u>Id.</u>

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. <u>Id.</u>; <u>see also</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." <u>Bhan</u>, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. <u>Nissan</u>, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific

6

evidence to show that a dispute of material fact exists.  Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition.  Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  Id. at 1107.

## DISCUSSION

### I.   § 1983 Claim Against Defendant Officers

In order to state a claim under § 1983, plaintiffs must allege two elements:  (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under the color of State law.  West v. Atkins, 487 U.S. 42, 48 (1988)(citations omitted).

Municipalities cannot be held vicariously liable under section 1983 for the actions of their employees.  Monell v. Dept. of Social Services of the City of N.Y., 436 U.S. 658, 691 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Id. at 694. More specifically, municipalities may be held liable for inadequate police training "only where failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," City of Canton v. Harris, 489 U.S. 378, 388 (1989), and "the identified deficiency in a city's training program [is] closely related to the ultimate injury."  Id. at 391.

7

Marconi brings a § 1983 claim against Defendant Officers, alleging a deprivation of his constitutionally protected rights "including but not limited to: a) Deprivation of liberty without Due Process of law; b) Freedom from unreasonable search and seizure; and/or c) Equal Protection of law."  FAC ¶ 18.  Defendants argue that the only claim sufficient to survive summary judgment is Plaintiff's claim that Fox used excessive force.  However, there are also triable issues of fact with respect to Fox's search of Plaintiff following the stop.

A.   Pat Down Search

The parties agree that the stop was justified at its inception.  It is undisputed that Fox and Chan saw Plaintiff urinating in the alley in violation of San Francisco Police Code § 153.  However, in addition to allegations of excessive force, Plaintiff alleges an improper search.

Even if the initial stop is lawful, a court "must still inquire as to whether the subsequent detention and intrusion was reasonably related to the scope of the stop."  Bennett v. City of Eastpointe, 410 F.3d 810, 821 (6th Cir. 2005).  Here, Fox testified that he recalls being able to tell from looking at Marconi that he was not carrying a weapon.  Nonetheless, according to Marconi's evidence, taken as true for purposes of this motion, Fox searched Marconi in a rough manner.  Although the scope of the detention and intrusion is also considered under the Fourth Amendment reasonableness standard, it is a separate inquiry from the excessive force inquiry.

Because Defendants offer no explanation or justification for

8

the pat down search, the Court finds that there are triable issues of fact with respect to the reasonableness of the pat down search following the stop.  It is clearly established that an officer may not conduct a "search incident to citation" absent other justification.  See Knowles v. Iowa, 525 U.S. 113, 117-19 (1998). Here Fox himself testified that he had no reasonable suspicion that Marconi was armed nor is there any suggestion that the detention and pat down were for the purposes of preserving evidence.  See id.; Menotti v. City of Seattle, 409 F.3d 1113, 1153-54 (9th Cir. 2005).  Therefore, the Court finds that, viewing the evidence in the light most favorable to Marconi, there is a triable question with respect to the legality of the pat down search under the Fourth Amendment.

Defendants also argue that, even if the search following the stop was unlawful, they are entitled to summary judgment based on qualified immunity.  The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For police officers, the qualified immunity doctrine "recognizes that officers make probable cause assessments in the field under pressure and therefore affords the officer leeway, permitting a reasonable mistake without resulting in individual liability of the officer, when the law is not clearly established."  Graves v. City of Coeur D'Alene, 339 F.3d 828, 848 n.25 (9th Cir. 2003).

The threshold question is whether, if all factual disputes

9

1 were resolved in favor of the party asserting the injury, the
2 evidence would show the defendant's conduct violated a
3 constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001).
4 Because a violation of Marconi's rights under the Fourth Amendment
5 could be made out, the next step is to ask whether the
6 constitutional right in issue was clearly established. Id.

7     The question here is whether it would be clear to a reasonable
8 officer that his conduct was unlawful in the situation he
9 confronted. Id. If the law did not put the officer on notice that
10 his conduct would be clearly unlawful, summary judgment based on
11 qualified immunity is appropriate. Id.

12     The Ninth Circuit engages in a two-part test to determine if
13 the right was clearly established at the time of the allegedly
14 impermissible conduct. Franklin v. Fox, 312 F.3d 423, 437 (9th
15 Cir. 2002). First, it must be determined if the law that governs
16 the official's conduct was clearly established. Id. The plaintiff
17 bears the burden of proving that the right was clearly established
18 at the time of the allegedly impermissible conduct. Maraziti v.
19 First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992).

20     The next question is whether, under that clearly established
21 law, a reasonable official could have believed his conduct was
22 lawful. Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir.
23 1993). The defendant bears the burden of establishing that his or
24 her actions were reasonable, Doe v. Petaluma City Sch. Dist., 54
25 F.3d 1447, 1450 (9th Cir. 1995), and the defendant's good faith or
26 subjective belief in the legality of his or her actions is
27 irrelevant. Alford v. Haner, 333 F.3d 972, 978-79 (9th Cir. 2003).

28     10

As discussed above, the law establishing when a warrantless search of an individual is permissible is clearly established. See Menotti, 409 F.3d at 1154 (reversing summary judgment granting qualified immunity because "the exceptions to the Fourth Amendment's warrant requirement have been categorically defined"). Therefore, Defendants bear the burden of establishing that their conduct was reasonable. Defendants have not met that burden with respect to the events following the initial stop.

Therefore, the Court denies Defendants' motion for partial summary judgment to narrow Plaintiff's first claim to a claim for excessive force.

B. Officer Furminger

Defendants argue that Furminger is entitled to summary judgment on this claim because Marconi has not presented any evidence demonstrating that Furminger touched or communicated with him during the incident. Plaintiff counters that Furminger can be held liable because he had an affirmative duty to intervene when Fox and Chan were violating his rights. A police officer may be held liable under § 1983 for failing to intervene if a fellow officer violates the constitutional rights of a suspect. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000). However, officers who are not present or do not have a "realistic opportunity" to intercede cannot be held liable. Id.

Marconi offers several pieces of evidence from which a reasonable trier of fact could infer that Furminger both knew of the alleged violation and had an opportunity to intercede. Piedra, who was engaged with Furminger during the incident, testified that

11

he could hear Fox and Chan talking to Marconi, using "arrogant, snotty" tones. Piedra Dep. at 43:7. Further, despite Defendants' argument otherwise, there is evidence to support Marconi's assertion that Furminger could have seen what was happening. According to Piedra's testimony, he was standing "in between" when he was talking to Furminger. Id. at 42:1-2. Because Piedra also testified that he had to turn around in order to see what was happening with Marconi, a reasonable juror could infer that Piedra was standing with his back to Marconi and facing Furminger. A reasonable juror could also infer that Furminger was facing Piedra while he was talking to him and therefore was facing Fox, Chan and Marconi. Further, there is undisputed evidence that Furminger is six feet, five inches tall, leading to a reasonable inference that he could see what was happening behind Piedra while standing facing him. Because Piedra, who was standing with Furminger, could hear and see what was happening when he turned around, a reasonable juror could infer that Furminger was also aware of the interaction between Fox, Chan and Marconi.

Finally, a reasonable juror could infer that Furminger knew that Fox and Chan were at the very least acting improperly and that he had the ability to stop their actions based on the testimony that he told Fox and Chan that Gora was "a cop" and the three immediately left the scene without citing either Marconi or Piedra.

The Court finds that, drawing all inferences in favor of Plaintiff, there is sufficient evidence to create an inference that Furminger knew of the alleged constitutional violation and had a realistic opportunity to intercede. Therefore, the Court denies

12

summary judgment on this ground.

II. <u>Monell</u> Claim Against the City and County of San Francisco

Defendants argue that there is insufficient evidence to establish a triable question of liability on the part of the City. Plaintiff argues that he has presented evidence of deliberate indifference based on the City's failure adequately to train or supervise its officers.

As noted above, local governments are "persons" subject to liability under § 1983 where official policy or custom causes a constitutional tort. <u>Monell</u>, 436 U.S. 690.  To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation. <u>Plumeau v. School Dist. #40</u>, 130 F.3d 432, 438 (9th Cir. 1997).

A local government may be liable for constitutional violations resulting from its failure to supervise, monitor or train, but only where the inadequacy of supervision, monitoring or training amounts to deliberate indifference to the rights of the people with whom the government's employees come into contact. <u>City of Canton</u>, 489 U.S. at 388; <u>Van Ort v. Estate of Stanewich</u>, 92 F.3d 831, 835 (9th Cir. 1996).  Only where a failure to supervise and train reflects a "'deliberate' or 'conscious' choice" by a local government can the local government be liable under § 1983.  <u>City of Canton</u>, 489 U.S.

13

at 389.  Further, the plaintiff must demonstrate that the alleged deficiency in supervision and training actually caused the constitutional violation.  Id. at 391.  The appropriate inquiry is therefore whether the injury would have been avoided "had the employee been trained under a program that was not deficient in the identified respect."  Id.  But-for causation is not enough; "[r]ather, the policy must be the proximate cause of the section 1983 injury."  Van Ort, 92 F.3d at 837.  In making this inquiry, the court must apply "rigorous standards of culpability and causation . . . to ensure that the municipality is not held liable solely for the actions of its employee."  Board of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

Plaintiff has provided little evidence to meet this rigorous standard.  He alleges a general lack of responsiveness to complaints and what he characterizes as a "disproportionate number of complaints for excessive force."  Opposition at 16.  As Defendants note, the cases cited by Plaintiff in support of his allegation that a failure to address complaints of use of excessive force can be evidence of causation for purposes of Monell liability all concern situations where there were unresolved or unaddressed complaints against the individual officers whose conduct was at issue.  The evidence submitted under seal is insufficient to create liability for the City because it is not directly relevant to the conduct alleged here.

The Court finds that Marconi has presented insufficient evidence to create a triable question with respect to the City's liability under § 1983 and therefore grants Defendants' motion for

14

summary judgment with respect to the second cause of action.

## III. Battery Claim

Defendants argue that Marconi has not adduced sufficient evidence to create a triable issue with respect to his battery claim against Chan. As Defendants point out, it is undisputed that Chan never touched Marconi. A prima facie case of common law battery is made if the plaintiff proves intentional harmful contact with his person. Piedra v. Dugan, 123 Cal. App. 4th 1483, 1495 (2004). In a battery action against a police officer, a plaintiff must prove unreasonable use of force in addition to the elements of a general battery claim. Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1274 (1998).

The Court grants Defendants' motion for summary judgment with respect to the battery claim against Chan.

## IV. Assault Claim

Defendants also argue that there is insufficient evidence to create a triable question with respect to the assault claim against Chan. "To make out a claim for assault under California law, [plaintiff must] establish (1) that defendant intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that plaintiff was put in imminent apprehension of such contact." Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004) (internal quotation omitted). Defendants argue that Marconi has failed to show any intentional act to cause contact or imminent apprehension of contact.

Marconi argues that Chan was one of the two officers who got out of the car and rushed towards him, leading him to believe that

15

he was going to be mugged. Marconi has also presented evidence that Chan was one of the two officers standing over him after Fox pushed Marconi to the ground and that Chan instructed Marconi to clean up his urine, stating, "You'd better use your shirt to wipe it up fag." Piedra further characterized the way that Fox and Chan were standing as "threatening." Piedra Dep. at 117:13-21.

None of this is sufficient to provide evidence that Chan intended offensive contact with Marconi, or apprehension of it. Police officers must be able to approach suspects quickly. "Ordinarily mere words, unaccompanied by some act apparently intended to carry the threat into execution, do not put the other in apprehension of an imminent bodily contact, and so cannot make the actor liable for an assault." Restatement (Second) of Torts § 31 cmt. a. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is insufficient evidence to create a triable question of fact with respect to Chan's intent. Therefore, the Court grants Defendants' motion for summary judgment with respect to the assault claim against Chan.

V.   False Imprisonment Claim

The tort of false imprisonment consists of "the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." Fermino v. Fedco, Inc., 7 Cal. 4th 701, 715 (1994). As discussed above, the lawfulness of Defendant Officers' decision to stop Marconi is not disputed. Fox and Chan observed Marconi violating the San Francisco Police Code and therefore had the lawful authority to stop and arrest him. See Atwater v. Lago Vista, 532 U.S. 318, 354

16

1  (2001).  Marconi cites no authority to support his contention that
2  his "detention lost its alleged legal purpose" when Defendants
3  began to use force, and that he has therefore created a triable
4  question of false imprisonment.  Opposition at 19.  The Court
5  grants Defendants' motion for summary judgment with respect to the
6  claim of false imprisonment.

VI.  Negligent Supervision Claim

Defendants claim that the City is immune from claims of negligent supervision under the California Tort Claims Act, which provides, "Except as otherwise provided by statute . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Cal. Gov. Code § 815(a).  Plaintiff does not cite a statute creating liability for negligent supervision, but counters that the City is vicariously liable for Defendant Officers' use of unreasonable force based on California Government Code § 815.2, which provides, "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

However, as Defendants point out, Plaintiff has only plead a claim for negligent supervision.  Nowhere in the sixth cause of action does he mention the actions of Defendant Officers.  Although the claim incorporates the preceding paragraphs of the complaint, including the claims against Defendant Officers for State law assault and battery, he bases the negligent supervision claim on

17

the City's alleged duties, including the "duty of care to ensure the safety and well-being of Plaintiff" and "the duty to implement a genuine anti-discrimination policy."  FAC ¶¶ 46, 49.  Here Plaintiff has plead a claim of direct negligence on the City's part rather than vicarious liability for Defendant Officers' actions.  See Munoz v. City of Union City, 120 Cal. App. 4th 1077, 1111-1113.  Plaintiff has not sought relief based on vicarious liability and there is no statutory basis for his direct negligence claim.  Therefore, the Court grants Defendants' motion for summary judgment with respect to the Sixth Cause of Action.

VII.  California Government Code § 821.6 Immunity

Under California Government Code § 821.6, "A public employee is not liable for an injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  Defendants argue that the officers were investigating a crime and that § 821.6 therefore immunizes them against Plaintiff's eighth cause of action for intentional infliction of emotional distress (IIED) and ninth and tenth causes of action for relief under the Ralph Act, California Civil Code § 51.7, and the Bane Act, California Civil Code § 52.1.

Plaintiff does not dispute that § 821.6 immunity extends to investigations.  Rather, Plaintiff argues that the immunity does not apply to Defendant Officers' actions in this case because the officers were not truly investigating the crime they witnessed nor was a citation or arrest ever made or intended and therefore Defendant Officers were acting outside the scope of their

18

employment. However, Plaintiff cites no authority to support his theory. Therefore, the Court grants Defendants' motion for summary judgment on the eighth, ninth and tenth causes of action.

VIII.  Claims Against Officer Furminger for IIED and Relief Under the Bane and Ralph Acts

Defendants also argue that there is insufficient evidence to sustain Plaintiff's IIED, Bane Act or Ralph Act claims against Furminger because Furminger did not directly participate in any interaction with Marconi. Although there is authority establishing liability for an individual who fails to intervene under § 1983, there is no authority for imposing liability for IIED or under the Bane or Ralph Acts for failure to intervene. Therefore, the Court grants Defendants' motion for summary judgment with respect to these claims against Furminger on this additional ground as well.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for partial summary judgment in part and DENIES it in part. (Docket No. 31).[3] The only remaining claim against Furminger is the § 1983 claim based on his alleged failure to intervene. The remaining claim against Fox and Chan is the § 1983 claim for use of excessive force and conducting an illegal search. In addition, the

---

[3] Defendants object to much of Plaintiff's evidence. To the extent that the Court relies on any evidence to which Defendants object, those objections are overruled. To the extent that the Court decides the motion without considering evidence to which Defendants have objected, their objections are overruled as moot. The Court has not relied on inadmissible evidence in deciding this matter.

19

assault and battery claims against Fox remain.  There are no remaining claims against the City.

IT IS SO ORDERED.

Dated:  10/3/06

_____
CLAUDIA WILKEN
United States District Judge